# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

NORMAN J. DEAN                                    CIVIL ACTION

VERSUS                                            NO. 21-1482

DARRYL VANNOY, WARDEN                             SECTION: "M"(1)


## REPORT AND RECOMMENDATION

Petitioner, Norman J. Dean, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

Petitioner was charged with simple burglary of an inhabited dwelling under Louisiana law,[1] and he pleaded not guilty and not guilty by reason of insanity.[2]  After he was convicted of the charged offense in a bench trial,[3] he was found to be a third offender and sentenced as such to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[4]  The Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence on April 9, 2014,[5] and the Louisiana Supreme Court then denied his related writ application on November 26, 2014.[6]

---

[1] State Rec., Vol. 1 of 7, Bill of Information.
[2] State Rec., Vol. 1 of 7, minute entry dated February 21, 2013.
[3] State Rec., Vol. 6 of 7, transcript of May 22, 2013, p. 68; State Rec., Vol. 1 of 7, minute entry dated May 22, 2013.
[4] State Rec., Vol. 6 of 7, transcript of June 20, 2013; State Rec., Vol. 1 of 7, minute entry dated June 20, 2013; State Rec., Vol. 1 of 7, Judgment & Reasons dated June 20, 2013.
[5] State v. Dean, 140 So. 3d 192 (La. App. 5th Cir. 2014); State Rec., Vol. 6 of 7.
[6] State v. Dean, 152 So. 3d 904 (La. 2014); State Rec., Vol. 7 of 7.

On October 26, 2015, petitioner filed an application for post-conviction relief with the state district court.[7] That application was denied on February 24, 2016.[8] His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on May 20, 2016,[9] and the Louisiana Supreme Court on October 16, 2017.[10]

On or after December 19, 2018, petitioner filed with the state district court a "Motion to Correct an Illegal [sic] Imposed Habitual Offender Sentence."[11] That motion was denied on January 9, 2019.[12]

On or after August 2, 2021, petitioner then filed the instant federal application.[13] The state filed a response arguing that the application is untimely,[14] and petitioner filed a reply.[15] For the following reasons, the application is indeed untimely.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

---

[7] State Rec., Vols. 1 and 2 of 7, Uniform Application for Post-Conviction Relief. Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing by a *pro se* prisoner, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record with respect to *pro se* filings herein, the Court has simply used the signature dates of the pleadings as their filing dates, in that the pleadings were obviously placed in the mail no earlier than the dates on which they were signed. See United States v. Minor, 582 F. App'x 315, 316 (5th Cir. 2014); Estes v. Boutté, Civ. Action No. 19-2289, 2020 WL 1990823, at *2 (E.D. La. Mar. 6, 2020), adopted, 2020 WL 1984331 (E.D. La. Apr. 27, 2020); Crochet v. Goodwin, Civ. Action No. 13-3106, 2014 WL 5093995, at *2 n.10 (E.D. La. Oct. 8, 2014); Thornton v. Terrell, Civ. Action No. 09-1631, 2009 WL 4855743, at *1 n.1 (E.D. La. Dec. 4, 2009).

[8] State Rec., Vol. 2 of 7, Order dated February 24, 2016.

[9] State ex rel. Dean v. Cain, No. 16-KH-279 (La. App. 5th Cir. May 20, 2016); State Rec., Vol. 3 of 7.

[10] State ex rel. Dean v. State, 226 So. 3d 1121 (La. 2017); State Rec., Vol. 7 of 7.

[11] State Rec., Vol. 3 of 7, "Motion to Correct an Illegal [sic] Imposed Habitual Offender Sentence."

[12] State Rec., Vol. 3 of 7, Order dated January 9, 2019.

[13] Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). The certificate of service on supporting memorandum accompanying petitioner's post-conviction application was dated August 2, 2021. Rec. Doc. 1-1, p. 45. Accordingly, that it is the earliest date he could have delivered the application to prison officials for forwarding to this Court.

[14] Rec. Doc. 9.

[15] Rec. Doc. 10.

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Because petitioner does not allege the existence of a state-created impediment, a newly recognized constitutional right, or a newly discovered factual predicate, Subsections B, C, and D are inapplicable in the instant case. Accordingly, Subsection A controls, and so his federal limitations period commenced when his state court judgment became final.

With respect to determining that date of finality, the United States Fifth Circuit Court of Appeals has explained:

The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

Therefore, petitioner's state criminal judgment became final for federal purposes on February 24, 2015, i.e. ninety days after the Louisiana Supreme Court denied his direct-review writ application on November 26, 2014.[16]  Accordingly, in order to be timely, this federal application had to be filed within one year of that date, unless that deadline was extended through tolling.

The Court first considers statutory tolling.  Regarding the limitations period set forth in § 2244(d)(1), federal law provides:  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  That "tolling provision applies only to those state post-conviction filings that **seek reexamination** of the relevant state-court conviction or sentence."  Wall v. Kholi, 582 F.3d 147, 151 (1st Cir. 2009) (emphasis added), aff'd, 562 U.S. 545, 553 (2011) ("'Review' is best understood as an act of inspecting or examining or a judicial reexamination.  We thus agree with the First Circuit that 'review' commonly denotes 'a looking over or examination with a view to amendment or improvement.'" (citations and quotation marks omitted)).  See Brian R. Means, Federal Habeas Manual § 9A:74 (May 2021 Update) ("[A] state court application that does not seek judicial review of a judgment or provide the state court with authority to order relief from a judgment generally will not toll the limitations period.").

After two hundred forty-three (243) days of his one-year period elapsed, petitioner first tolled the federal limitations period by filing a post-conviction application with the state district

---

[16] State v. Dean, 152 So. 3d 904 (La. 2014); State Rec., Vol. 7 of 7.

court on October 26, 2015.[17] Although that application was denied by the district court,[18] it remained "pending" for § 2244(d)(2) purposes for the duration of the post-conviction proceedings, so long as petitioner continued to seek review at the higher levels of the state court system in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004). Here, the state does not argue that petitioner's related writ applications were untimely filed, and, in fact, concedes that statutory tolling continued until the Louisiana Supreme Court denied post-conviction relief on October 16, 2017.[19]

Once the limitations period resumed running at that point, petitioner had one hundred twenty-two (122) days remaining. Accordingly, he had only until **February 15, 2018**, either to again toll the limitations period or to file his federal application.

Petitioner had no other applications pending before the state courts at any time on or before February 15, 2018.[20] Therefore, he clearly is not entitled to further statutory tolling.

---

[17] State Rec., Vols. 1 and 2 of 7, Uniform Application for Post-Conviction Relief.

An observation is in order: Prior to filing that post-conviction application, petitioner, on or about May 15, 2015, had filed a motion requesting that he be appointed counsel to assist him in preparing a post-conviction application. State Rec., Vol. 1 of 7, "Motion for Appointment of Counsel." That motion was denied because he was not entitled to counsel for that purpose. State Rec., Vol. 1 of 7, Order dated June 3, 2015. Such motions cannot be considered applications "for State post-conviction or other collateral review" for tolling purposes because they are preliminary in nature and do not directly call into question the validity of petitioner's conviction or sentence. See Wall v. Kholi, 562 U.S. 545, 556 n.4 (2011) (noting that "a motion for post-conviction discovery or a motion for appointment of counsel … generally are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment"). Nevertheless, even if the limitations period had been tolled during the brief time that motion was pending, the result in this case is the same: petitioner's federal application was still filed several years too late.

[18] State Rec., Vol. 2 of 7, Order dated February 24, 2016.

[19] State ex rel. Dean v. State, 226 So. 3d 1121 (La. 2017); State Rec., Vol. 7 of 7; see Rec. Doc. 9, p. 11.

Out of an abundance of caution, the Court notes that petitioner also filed a "Motion for Leave to File a Second or Successive Application for Post-Conviction Relief" with the state district court on March 14, 2016, and that motion was denied on April 28, 2016. See State Rec., Vol. 2 of 7, Order dated April 28, 2016. However, the effect of that motion on the limitations period need not be separately considered, because, as explained herein, the limitations period was already tolled for the entire time that motion was pending.

[20] Although petitioner filed a "Motion to Correct an Illegal [sic] Imposed Habitual Offender Sentence," that motion was filed no earlier than December 19, 2018 – in other words, after the federal limitations period had already expired. Pleadings filed in the state courts after the expiration of the federal statute of limitations have no bearing on § 2244(d)(2) tolling determinations. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. July 24, 2000), aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). That is so because once the federal limitations period has expired, "[t]here [i]s nothing to toll." Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

The Court next considers equitable tolling.  The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling.  <u>Holland v. Florida</u>, 560 U.S. 631, 645 (2010).  However, "equitable tolling is unavailable in most cases …."  <u>Miles v. Prunty</u>, 187 F.3d 1104, 1107 (9th Cir. 1999); <u>accord</u> <u>Davis v. Johnson</u>, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances").  Indeed, the Supreme Court held that "a petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing."  <u>Holland</u>, 560 U.S. at 649 (internal quotation marks omitted).  A petitioner bears the burden of proof to establish entitlement to equitable tolling.  <u>Alexander v. Cockrell</u>, 294 F.3d 626, 629 (5th Cir. 2002).  In the instant case, petitioner has brought forth no evidence whatsoever demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.[21]

---

[21] The Court acknowledges that the record shows that petitioner has a history of mental illness; however, he does not expressly argue that equitable tolling is warranted on that basis.  In any event, it is not.  "Although mental illness may warrant equitable tolling, a petitioner (i) must make a threshold showing of incompetence and (ii) must show that this incompetence affected his ability to file a timely habeas petition[]."  <u>Jones v. Stephens</u>, 541 F. App'x 499, 505 (5th Cir. 2013).  Where, as here, "the record makes clear that regardless of any mental illness, [a] petitioner has pursued, without assistance of counsel, both state and federal habeas relief," equitable tolling is not warranted because "there is no causal connection between [his] mental illness and his failure to file a timely federal habeas petition."  <u>Id.</u>; <u>accord</u> <u>Lindsey v. Vannoy</u>, Civil Action No. 19-12281, 2021 WL 1986395, at *4 (E.D. La. Apr. 29, 2021) ("[I]f a petitioner was capable of filing pleadings seeking post-conviction relief in the state courts despite his mental illness, that fact obviously undercuts any suggestion that he was incapable of similarly seeking habeas corpus relief in federal court."), <u>adopted</u>, 2021 WL 1985423 (E.D. La. May 18, 2021).

Lastly, it must also be noted that a petitioner can overcome the AEDPA's statute of limitations by making a convincing claim of "actual innocence" under McQuiggin v. Perkins, 569 U.S. 383 (2013). In Perkins, the United States Supreme Court held:

> This case concerns the "actual innocence" gateway to federal habeas review applied in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and further explained in House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). In those cases, a convincing showing of actual innocence enabled habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. Here, the question arises in the context of 28 U.S.C. § 2244(d)(1), the statute of limitations on federal habeas petitions prescribed in the Antiterrorism and Effective Death Penalty Act of 1996. Specifically, ... can the time bar be overcome by a convincing showing that [the petitioner] committed no crime?
>
> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S., at 329, 115 S.Ct. 851; see House, 547 U.S., at 538, 126 S.Ct. 2064 (emphasizing that the Schlup standard is "demanding" and seldom met).

Perkins, 569 U.S. at 386; see Schlup, 513 U.S. at 324 ("Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.").

Here, petitioner does not expressly invoke Perkins. He does argue, however, that the state failed to establish his guilt at trial and that, in any event, he was not guilty by reason of insanity. Even if those contentions are interpreted as claims of actual innocence, they fall short for the following reasons.

When considering a claim of actual innocence, a federal habeas court first looks to the elements of the conviction in question. Here, as noted, petitioner was convicted of simple burglary of an inhabited dwelling. Under Louisiana law, "[t]o convict an accused of simple burglary of an inhabited dwelling, the State must prove: (1) there was an unauthorized entry; (2) the structure was

inhabited at the time of entry; and (3) the defendant had the specific intent to commit a felony or theft inside the structure." State v. Netter, 79 So. 3d 478, 482 (La. App. 5th Cir. 2011). "To satisfy the unauthorized entry element, the state must show that the defendant did not have permission to enter the house." State v. Martin, 679 So. 2d 557, 560 (La. App. 2d Cir. 1996). "Entry is accomplished whenever any part of the defendant's person passes the line of the threshold. It is sufficient that any part of the person intrudes even momentarily, into the structure." State ex rel. R.E.B., 643 So. 2d 287, 289 (La. App. 2d Cir. 1994); accord State v. Kirby, 309 So. 3d 946, 953 (La. App. 2d Cir. 2021).

The habeas court next considers the evidence concerning the charged offense. In doing so, the court "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." House, 547 U.S. at 538 (quotation marks omitted).

Therefore, courts often begin by examining the evidence presented at trial. See, e.g., Johnson v. Cain, Civ. Action No. 14-543, 2015 WL 4528889, at *3 (E.D. La. July 27, 2015), aff'd, 667 F. App'x 474 (5th Cir. 2016); Lyles v. Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014). On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized that evidence in this case as follows:

> On May 21, 2011, at approximately 3:45 a.m., Regina Molony, her husband, and her son were upstairs in their Metairie home when she and her husband heard unusual noises downstairs and then a very loud crash. The noises seemed to be coming from their "mud room," which was where the back door was located. Mrs. Molony then called 911.
> Detective Joseph Waguespack of the Jefferson Parish Sheriff's Office responded to the call. When he arrived, he observed that the glass pane on the rear door was shattered and that there were pry marks on the door near the locking mechanism and the window pane. Detective Waguespack also observed a red substance on the shattered glass and what appeared to be droplets of blood that led from the shattered glass door, down the driveway, and up the street. Additionally, a screwdriver was found at the scene.

A crime scene technician from the Jefferson Parish Sheriff's Office went to the scene and collected the red blood-like substance from the driveway of the residence. Subsequent testing of this substance revealed that the DNA profile from the sample of blood from the driveway matched the DNA profile of defendant.

After receiving the results of the DNA analysis, Detective Stanley Brown, the officer assigned to the case, spoke to defendant. Defendant, following a verbal advisal of his rights, told Detective Brown that he had a drug problem and that on the night of this incident, he was riding his bicycle through the neighborhood when he observed a purse through the glass. He explained that he tried to pry the door open but was unsuccessful. He thereafter broke the glass, reached in, grabbed a purse, and fled. According to Detective Brown, defendant admitted that he took cash out of the purse and disposed of it. He stated that he cut himself in his eye area and was bleeding, which was where the blood on the scene came from.

At trial, defendant testified in his own behalf. According to defendant, at the time of the offense, he was hallucinating, having delusions, and abusing alcohol and drugs. With regard to the details of the offense, defendant claimed that he did not remember where he was during the morning hours of May 21, 2011, nor did he remember having a screwdriver or entering the home. However, he remembered punching the window with his fist, after which he came to his senses. He claimed that he never entered the home, that he did not take anything from the home, and that he did not punch the glass, but rather punched at a hallucination. Although defendant recalled leaving the scene, he did not remember going to the scene. Defendant recalled Detective Stanley Brown coming and talking to him after he was arrested; however, he did not remember giving a statement and claimed that he did not answer the questions Detective Brown posed to him.

Defendant further testified that he had suffered from mental illness since he was a child and that when he was five or six years old, he tried to set his father on fire. Although defendant received medications for his mental illness in Orleans Parish Prison, he explained that he was last released from prison on April 10, 2010, and from that date until May of 2011, he only had five days of medication for his mental illness. Defendant also testified that at the time of the offense, he went from living in his family home to living in abandoned buildings. He explained that he could not trust himself around his family and did not want to hurt them, so he was living alone and was homeless on the streets.

In addition to this testimony at trial relating to the actual offense, there was also testimony presented by Dr. Rafael Salcedo, an expert in the field of forensic psychology, and by Dr. Richard Richoux, an expert in the field of forensic psychiatry, regarding defendant's sanity at the time of the offense. Both doctors examined defendant and additionally reviewed the details of the case, defendant's admission, and defendant's medical records prior to reaching an opinion about his sanity.

Dr. Salcedo, who testified for the State, stated that the medical records indicated defendant had a history of being diagnosed with major psychiatric disorders, including schizoaffective disorder, paranoid schizophrenia, psychosis NOS, and cyclothymia, the less severe form of bipolar disorder. Dr. Salcedo stated

that defendant also had a history of being "medication noncompliant" when he was not in institutional settings.

Dr. Salcedo asserted that defendant was like many people who had a functional mental illness and antisocial personality, which meant that defendant tended to have legal problems and substance abuse problems. Dr. Salcedo noted that defendant had abused marijuana and heroin. He testified that defendant suffered from a functional mental illness which had the potential for impacting his ability to distinguish right from wrong; however, he explained that impairment of that ability was a very high bar. Dr. Salcedo stated that a person could be psychotic and still be able to distinguish right from wrong.

Dr. Salcedo testified that defendant's interview with detectives three weeks after the offense was the closest in time to the offense that he had to review. He noted that during the interview, defendant appeared to have been lucid, rational, and able to discuss with detectives what took place during the offense. Dr. Salcedo asserted that he was also provided with medical records from LSU from 2010, which was approximately six months before the offense, documenting a suicide attempt wherein defendant attempted to overdose with heroin. He stated that defendant had periods of psychosis and lucidity and that defendant was not psychotic when he and Dr. Richoux examined him in January of 2013. He further testified that when he and Dr. Richoux examined defendant the two prior times for competency, he did not have psychotic symptoms. Dr. Salcedo asserted that people who were grossly psychotic and delusional had difficulty recalling past events; however, defendant apparently recalled the incident based on his statement to the police.

Dr. Salcedo testified that he had no evidence linking defendant's mental illness to the offense. He explained that the offense showed goal-directedness and efforts to avoid apprehension. Dr. Salcedo further explained that any effort to avoid apprehension implied an understanding or appreciation of the wrongfulness of one's conduct, whereas in the classic "not guilty by reason of insanity" scenario, a person felt what he did was right and justified. He asserted that the logic of a person who wants to avoid apprehension runs counter to the logic of a person who is incapable of distinguishing right from wrong.

Dr. Richard Richoux, who testified for the defense, said that he had spoken to defendant four times, and that when he was a psychiatrist at the jail, he had seen defendant on multiple occasions to prescribe his medications during his period of incarceration. Dr. Richoux further testified that he and Dr. Salcedo had failed to find evidence that defendant was unable to distinguish right from wrong at the time of the offense. He based this opinion on medical records, conversations with defendant, and defendant's version of events given to police.

Dr. Richoux stated that medical records showed defendant had a diagnosis of chemical dependency and schizoaffective disorder. Additionally, defendant told him that he was not taking psychiatric medication at the time of the offense but that he was using cocaine mixed with Kool-Aid and injecting it and also smoking crack cocaine. Defendant further told him that he experienced hallucinations around the time of the offense and said he was seeing demons. Defendant recalled leaving the scene of the offense on a bicycle and going to another area of New Orleans.

Dr. Richoux and Dr. Salcedo also reviewed the summary of the statement defendant gave to deputies shortly after the offense.  Dr. Richoux testified that defendant's behavior appeared to be goal-directed in that defendant saw what he wanted and attempted to get it by one means, and when that failed, he tried another means.   Dr. Richoux further testified that this did not indicate psychotic disorganized behavior.  He noted that defendant seemed to make efforts to avoid apprehension, which ordinarily implied knowledge of wrongfulness of one's conduct.  Dr. Richoux asserted that it took more than the presence of a mental illness to conclude that a person at a given point and time could not distinguish right from wrong.  He further asserted that there was no compelling evidence to say defendant was unable to distinguish right from wrong, and that there was compelling evidence to suggest that defendant could do so.[22]

Finally, the habeas court considers the evidence a petitioner submits in support of his claim of actual innocence.  That evidence must be both "new" and particularly compelling.

As to the first requirement, the jurisprudence is admittedly conflicting on what qualifies as "new" evidence in this context.  As the United States Fifth Circuit Court of Appeals has observed:

> The Supreme Court has not explicitly defined what constitutes "new reliable evidence" under the Schlup actual-innocence standard, and there is a circuit split. "This court has yet to weigh in on the circuit split concerning what constitutes 'new' evidence." Fratta v. Davis, 889 F.3d 225, 232 (5th Cir. 2018).

Hancock v. Davis, 906 F.3d 387, 389-90 (5th Cir. 2018) (footnote omitted).  That said, the Fifth Circuit then nevertheless went on to hold:

> Evidence does not qualify as "new" under the Schlup actual-innocence standard if "it was always within the reach of [petitioner's] personal knowledge or reasonable investigation." Moore [v. Quarterman, 534 F.3d [454,] 465 [(5th Cir. 2008)]. Consequently, though we have not decided what affirmatively constitutes "new" evidence, we have explained what does not.

Id. at 390.

As to the additional requirement that the "new" evidence be particularly compelling, the Fifth Circuit has explained:

> This exception's demanding standard requires evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also

---

[22] State v. Dean, 140 So. 3d 192, 195-98 (La. App. 5th Cir. 2014); State Rec., Vol. 6 of 7.

satisfied that the trial was free of nonharmless constitutional error.  The standard is seldom met.

An actual-innocence claim is only established when it is shown that, in the light of newly-discovered evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  Therefore, a credible claim must be supported by new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Actual innocence is then demonstrated only when the court scrutinizes the likely impact on reasonable jurors of the overall, newly supplemented record to conclude that, in the light of all evidence – both the evidence presented at trial and that newly discovered – no juror, acting reasonably, would have voted to find petitioner guilty beyond a reasonable doubt.

Floyd v. Vannoy, 894 F.3d 143, 154-55 (5th Cir. 2018) (citations, quotation marks, and brackets omitted).

Here, however, petitioner has presented no new evidence whatsoever, compelling or otherwise.  Accordingly, he has not met even "the threshold requirement" for Perkins to apply. Perkins, 569 U.S. at 386.  As a result, the "actual innocence" exception does not aid him.

Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the Perkins "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than **February 15, 2018**, in order to be timely.  However, his application was not filed until on or after **August 2, 2021**.  Accordingly, it is clearly untimely.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application filed by Norman J. Dean seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this___5th___ day of April, 2022.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**